**MDL 1569**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP - 4 2003

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re NESTLÉ WATERS NORTH AMERICA INC.,
MARKETING LITIGATION

MDL No.: 1569

_____ /

## PLAINTIFF MARAVILLA'S RESPONSE TO NESTLÉ'S MOTION TO TRANSFER AND TO CONSOLIDATE, AND SUPPORTING MEMORANDUM OF LAW

Plaintiff Scott Maravilla, on behalf of himself and all others similarly situated, hereby responds in opposition to Defendant Nestlé Waters North America, Inc.'s ("Nestlé") Motion for Transfer for Coordinated and Consolidated Pretrial Proceedings, and states:

### Introduction

The present lawsuit seeks relief under a Florida statute and Florida common law on behalf of Florida consumers. On July 8, 2003, Plaintiff filed this consumer class action in Florida's Eleventh Circuit Court in and for Miami-Dade County (Case No. 03-15907 CA 09). The Complaint states two exclusively state law claims against Nestlé on behalf of a putative class of Florida consumers.

Nestlé removed this action to the United States District Court for the Southern District of Florida on July 29, 2003, and Plaintiff thereafter filed his Motion for Remand. Plaintiff's remand motion is currently pending. Plaintiff filed his Motion for Class Certification and Incorporated Memorandum of Law on September 3, 2003.

**OFFICIAL FILE COPY**
**IMAGED SEP 4 '03**

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

MDL No.: 1569

On August 14, 2003, Nestlé filed its motion to consolidate seven (7) actions pending against it, including this case, and to transfer these consolidated cases to the United States District Court for the District of Connecticut. As discussed below, Plaintiff does not object to the consolidation of these cases, but opposes transfer to Connecticut. In short, Nestlé knowingly and willingly availed itself of nationwide process and suit, and has committed wrongs in a variety of states, as the present filings indicate. Now it wants to have the litigation proceed in the easiest possible way for it, regardless of the effect on wronged plaintiffs, the putative class members, and counsel. Plaintiff submits that this is inappropriate and contrary to the considerations governing consolidation and transfer. For the reasons set forth herein, Plaintiff respectfully submits that it would be more appropriate for the consolidated cases to be transferred to the Southern District of Florida.

**Argument**

**No Objection to Consolidation**

With respect to the consolidation issue, Plaintiff concurs with Nestlé that consolidation of the seven (7) pending actions would be in the best interests of justice and would best preserve judicial resources. Plaintiff therefore does not object to consolidation, but rather objects to all of these actions being consolidated in what appears to be Nestlé's chosen forum, that is, the United States District Court for the District of Connecticut. See *infra*.

**Any Consolidation Should Result in the Transfer of All Pending Actions to the United States District Court for the Southern District of Florida**

Contrary to Nestlé's blanket assertion, the "center of gravity" for these cases is not Connecticut; it is South Florida, where nearly half of the cases at issue (3 out of 7) are currently

2

MDL No.: 1569

pending (in the United States District Court for the Southern District of Florida). The Southern District court has extensive experience in class action jurisprudence, including consumer class actions like the present cases, and also has extensive experience in handling multi-district (MDL) litigation. Connecticut's connection to this litigation is limited to a single pending case and the state's housing of Nestlé's corporate headquarters, the latter of which obviously explains Nestlé's desire to have these cases consolidated there for its own convenience. For the reasons set forth below, Plaintiff respectfully request that should consolidation be ordered, all pending actions be transferred to the Southern District of Florida for Pretrial Proceedings.

**Florida is the Center of Gravity**

It is inescapable here that Nestlé has availed itself of the economic and other benefits associated with the marketing and selling of its products to consumers in many, many states, notwithstanding that on paper it is "located" in Connecticut. Having profited from its extensive multi-state product marketing and sales, Nestlé voluntarily subjected itself to being haled into court in any (or all) of the those many states with respect to these products. Notably, Nestlé has not challenged personal jurisdiction or venue in any of the seven (7) actions currently pending against it in the four respective states, including Florida.[1]

It is common practice in MDL situations like this for the consolidated actions to be transferred to the federal district where the majority of the actions are pending. See In Re Temporomandibular

---

[1] Nestlé's failure to challenge jurisdiction or venue in Florida or any state other than Connecticut belies its current blustering that the various plaintiffs' counsel are inappropriately trying "to shoehorn a litigation into a court that has no logical or factual connection to the underlying events." Motion, p. 8.

3

MDL No.: 1569

Joint (TMJ) Implants Products Liability Litigation, 844 F. Supp. 1553 (Judicial Panel on MDL 1994) (transferring consolidated cases to forum where majority of cases were pending); In Re Computervision Corporation Securities Litigation, 814 F. Supp. 85 (Judicial Panel on MDL 1993) (same); In Re Phonometrics, Inc., 1997 WL 83673 (Judicial Panel on MDL 1997) (same); In Re Bomb Disaster at Rosedale, California, 399 F. Supp. 1400 (Judicial Panel on MDL 1975) (same). Here, nearly half of the cases to be consolidated are currently pending in the Southern District of Florida. Plaintiff therefore respectfully submits that the Southern District court is the appropriate transferee forum based purely on the numbers.

Moreover, Nestlé must concede the allegations against it in the present action and the two other pending Florida cases arise from Nestlé's intentional targeting of Florida consumers, and seek relief under Florida consumer protection law. In other words, a clear plurality of the pending cases relate to Nestlé's activities in Florida and its violations of Florida statutory and common law. This reality likewise supports consolidation in the Southern District of Florida, not Connecticut.

Lastly, as Nestlé points out, plaintiffs' counsel in six (6) of the pending cases is common, with the only other counsel being the undersigned, whose sole case is pending in the Southern District of Florida. While plaintiffs' counsel in the six other cases has demonstrated its willingness to litigate its case(s) in Florida, New Jersey, Massachusetts and/or Connecticut, the same cannot be said for undersigned counsel. While the location of counsel is not a determinative factor in transfer decisions, it is nonetheless a factor to be considered. See generally In Re Anthracite Coal Antitrust Litigation, 436

4

MDL No.: 1569

F. Supp. 402 (Judicial Panel on MDL 1977).[2]

## The Southern District is Well-Equipped to Oversee these Consolidated Cases

The United States District Court for the Southern District of Florida historically has had one of

the highest case volumes in the United States.  The Southern District's caseload is only rivaled by its

efficiency, averaging a disposition rate far shorter then the national average (17 months as compared to

a national average of 21 months).  See Clerk of United States District Court for the Southern District of

Florida, 2002 Annual Report of the Court Administrator, 2002 at page 10 (attached hereto as Exhibit

1).

The presiding judge, Judge Hoeveler, is a highly regarded and preeminent jurist, with decades

of class action and MDL experience.  The Honorable Federico Moreno, District Court Judge for the

United States District Court, Southern District of Florida, has referred to Judge Hoeveler as "a judge's

judge possessing the attributes treasured by Dorothy's friends from the Wizard of Oz: courage, heart

and intellect."  See Florida Judge Fights to Preserve Everglades, by C. Wilson, www.ljworld.com,

dated June 29, 2003.

## Discovery Will be the Same Regardless

In essence, Nestlé is seeking to assert something akin to a "home venue" privilege, based on its

corporate headquarters being in Connecticut.  Such an argument necessarily ignores that irrespective of

what state appears on Nestlé's letterhead, it operates in many states, reaps enormous economic

---

[2] Interestingly, Nestlé's lead counsel is located in New Jersey, not Connecticut.

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

MDL No.: 1569

benefits from each of those many states, and has willingly subjected itself to being sued in any or all of those states.

Nestlé also overstates the benefits, if any, to orderly and efficient discovery should these cases be transferred to Connecticut. Aside from a few depositions of corporate representatives or other employees of Nestlé, discovery will not in fact be centered in Connecticut. First, irrespective of where Nestlé is headquartered, the vast majority of discovery will be conducted through the mail and via facsimile. Unless Nestlé is intending to give plaintiffs' counsel actual access to its files in Connecticut, which is doubtful, all document productions, interrogatory responses and admissions will be accomplished via mail or fax. Second, a substantial portion of discovery, including any site visits or similar physical inspections regarding the Poland Springs water sources, bottling facilities and the like, will be conducted in Maine, not Connecticut. Thus, travel by all counsel to Maine (including Nestlé's own counsel) will be required whether this case is consolidated in Florida or Connecticut. Third, the depositions of the representative plaintiffs in three (3) of the seven (7) pending actions will have to take place in Florida. In short, Connecticut offers no real benefit with respect to discovery that would justify ignoring that the majority of pending cases are presently in the Southern District of Florida.[3]

Finally, a review of the cases cited by Nestlé in its memorandum reveals that significant factors other than the location of the defendants' corporate headquarters justified transfer, demonstrating that this consideration alone is not sufficient to grant "home venue." See for example, In Re Clinton Oil Company Securities Litigation, 368 F. Supp. 813 (Judicial Panel on MDL 1973) (SEC action also

---

[3] There has been no significant progress, regarding discovery or otherwise, in any of the pending actions.

6

MDL No.:  1569

proceeding in transferee court); <u>In Re Anthracite Coal</u>, 436 F. Supp. 402 (Judicial Panel on MDL

1977) (grand jury criminal investigation occurred in transferee court); <u>In Re U.S. Financial Securities</u>

<u>Litigation</u>, 375 F. Supp. 1403 (Judicial Panel on MDL 1974) (several state law actions also pending in

forum of transferee court).

<b><u>Conclusion</u></b>

Based on the above arguments and authorities, Plaintiff respectfully requests should a

consolidation be ordered, which Plaintiff does not object to, that such consolidation occur in the United

States District Court for the Southern District of Florida.

Respectfully submitted,

Lance A. Harke, P.A.
Florida Bar No. 863599
Sarah Clasby Engel, P.A.
Florida Bar No. 991030
Alison C. Harke, Esq.
Florida Bar No. 871291

HARKE & CLASBY LLP
155 South Miami Avenue, Suite 600
Miami, Florida 33130
Telephone:      (305) 536-8220
Telecopier:     (305) 536-8229

*Attorneys for Plaintiff and Class Members*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP - 4 2003    MDL No.: 1569

## CERTIFICATE OF SERVICE    FILED
CLERK'S OFFICE

I hereby certify that served a true and correct copy of the foregoing pleading was served via facsimile and 1st Class U.S. mail to the parties on the attached Panel Service List this ___ day of September 2003.

8

MDL No.:  1569

## **PANEL SERVICE LIST**

Jeffery M. Gerrod, Esq.
Orloff, Lowenbach, Stifelman & Siegal, P.A.
101 Eisenhower Parkway
Roseland, N.J.  07068

Barry A. Ragsdale, Esq
Ivey & Ragsdale
1615 Financial Center
505 North 20th Street
Birmingham, AL 35203

9

EXHIBIT

1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# Planning for Excellence:
## Innovation and Continuous Improvement



*Clockwise from upper left: The David W. Dyer Federal Building and United States Courthouse circa 1933; the 1891 Key West Federal Customs House and Courthouse circa 1910; Architect's Model, new Miami Courthouse; and 1914 Federal Courthouse in Miami circa 1915.*

### 2002 ANNUAL REPORT OF THE
### COURT ADMINISTRATOR • CLERK OF COURT

This Report was prepared by the
Executive Offices of the Court Administrator • Clerk of Court
United States District Court, Southern District of Florida
301 North Miami Avenue, Room 321
Miami, FL 33128-7788
Phone: (305) 523-5100
www.flsd.uscourts.gov

# CASE PROCESSING AND DISPOSITION:
## Managing Volume Through Efficiency

Over the last several years, our Court's Annual Report has emphasized through comparative statistics this District's meteoric growth in filings over the last decade. While the filings growth halted this past year, this Court continues to be one of the busiest in the land, conducting more jury trials than any other district court. While these accomplishments are important and continue to be among the most significant definers of the Southern District of Florida as a whole, this year we intend to focus less on historical growth and more on how the work is done; how cases progress through the Court, and at what point during the process cases are concluded.

### Civil Cases

Last year, there were 7499 new civil cases filed in this District, and 7761 terminated. This computes to an average of 441 new filings and 457 terminations per authorized judge, which is 7% and 17% higher, respectively, than the national averages. (See Table I.) The average weighted civil caseload in this District was 401, which is 18% higher than the national average. *(Id.)*

This year's filings were distributed among our five divisional offices as shown in Table II. As South Florida's population continues to grow, our

| | Civil Filings | Criminal Filings | Total Filings |
|---|---|---|---|
| **Table II** **Southern District of Florida** **Civil and Criminal Cases Filed** **Fiscal Year 2002** | | | |
| Miami | 4043 | 1094 | 5137 |
| Ft. Lauderdale | 1792 | 300 | 2092 |
| West Palm Beach | 1171 | 211 | 1382 |
| Ft. Pierce | 393 | 96 | 489 |
| Key West | 100 | 42 | 142 |
| Total | 7499 | 1743 | 9242 |

Northern Division workload - which includes the Fort Pierce, West Palm Beach and Fort Lauderdale offices - becomes increasingly significant. As a result, the Court made the decision to locate its next authorized judgeship - the 18th, authorized by Public Law 107-273, Section 312, on November 2, 2002 - in Fort Pierce. The Fort Pierce office currently supports a resident Magistrate Judge, who has been assigned there full time since 1992, but has never had a resident District Judge.

More important than the quantity of cases processed, however, is the speed and efficiency with which they are processed. This District, despite a per-judge volume of filings far higher than the national average, continues to dispose of cases more quickly than the average district court. Our median time from filing to disposition of all civil cases was 7.7 months; the national median was 8.7 months. (*See* Table III.) For those civil cases that went to trial, the median time from filing to disposition in this District was 17.0 months, compared to a national median of 20.8 months. *(Id.)* Despite high caseloads, civil cases do not 'age' in this District at the same rate they do nationally. For example, while 4.9% of all cases in the land were more than three years old during fiscal year 2002, only 3.2% reached the triennial mark in this District during that same period. The Court completed 80 jury and 53 non-jury trials in civil cases in 2002.

Civil cases take many and varied forms in this Court. The most common civil cause of



**Table I** **Civil Cases Filed and Terminated** **Fiscal Year 2002**

■ Southern District of Florida   ■ All Districts