**MDL 1569**

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP - 4 2003

FILED
CLERK'S OFFICE

| | | |
|---|---|---|
| In re NESTLE WATERS NORTH AMERICA, INC. MARKETING LITIGATION | § § § | MDL No. 1569 |

## CONSOLIDATED RESPONSE TO MOTION FOR TRANSFER

COME NOW Monica Bliss-Weick, Muire Cosgrove, Daniel Gaito, Ticia Joseph, Deborah Kuhn, Lisa McGonagle, Michelle Savalle, and SDB Trucking, LLC, the Plaintiffs in six of the seven actions[1] that are the subject of the "Motion for Transfer for Consolidated Pretrial Proceedings" filed by Defendant Nestle Waters North America, Inc., and file this response to the Defendant's Motion for Transfer:

1.      The Plaintiffs admit the material averments of the Defendant's Motion for Transfer, with the following exceptions and additions:

a).      On September 2, 2003, Judge Gerald L. Goettel entered an order granting the plaintiffs' motion to remand the case of Michelle Savalle and SDB Trucking, LLC v. Nestle Waters North America, Inc., No. 03-CV-1204, from the United States District Court for the District of Connecticut to the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport. (A true and correct copy of Judge Goettel's

---

[1] The actions in which these Plaintiffs are parties are: Monica Bliss-Weick v. Nestle Waters North America, Inc., No. 03-61550 (S.D. Fla.); Muire Cosgrove v. Nestle Waters North America, Inc., No. 03-CV-3421 (D.N.J.); Daniel Gaito v. Nestle Waters North America, Inc., No. 03-CV-3422 (D.N.J.); Ticia Joseph v. Nestle Waters of North America, Inc., No. 03-CV-61452 (S.D. Fla.); Lisa McGonagle and Deborah Kuhn v. Nestle Waters North America, Inc., No. CV 1:03-CV-11370-DPW (D.Mass.); and Michelle Savalle and SDB Trucking, LLC v. Nestle Waters North America, Inc., No. 03-CV-1204 (D.Conn.).

remand order is attached hereto as Exhibit "A"). As a consequence, there is no longer an action pending in the proposed transferee court.

b). On or about August 20, 2003, the Defendant entered into a "Class Action Settlement Agreement" in a case pending in the Circuit Court for the Sixteenth Judicial Circuit, Kane County, Illinois involving a purported nationwide class settlement of all of the claims asserted by the Plaintiffs in the various cases that are the subject of the Defendant's Motion for Transfer. (A true and correct copy of the Defendant's "Class Action Settlement Agreement" is attached hereto as Exhibit "B").

c). On August 29, 2003, the Defendant removed the case of Deborah Bagwell and Margaret Dunn v. Nestle Waters North America, Inc., No. CV 03-RRA-2401-J, from the Circuit Court of Walker County, Alabama to the United States District Court for the Northern District of Alabama. The case was assigned to Magistrate Judge Robert R. Armstrong, Jr. and a motion to remand the Alabama action was filed by the plaintiffs on September 2, 2003. It is anticipated that the Alabama action will be added by the Defendant to those actions sought to be transferred and consolidated by this Panel. The plaintiffs in the Alabama case are also represented by the undersigned counsel, among others.

d). On August 25, 2003, pursuant to a motion by the Defendant, the case of Monica Bliss-Weick v. Nestle Waters North America, Inc., No. 03-61550 (S.D. Fla.) was reassigned to the docket of Judge William H. Hoeveler. Coincidentally, on August 27, 2003, the plaintiff in the Bliss-Weick case moved for leave to dismiss that case without prejudice.

e).     Timely filed motions to remand are currently pending in all of the remaining actions, with the exception of Bliss-Weick. A hearing on the plaintiffs' motion to remand is scheduled in the McGonagle case in the District of Massachusetts on September 25, 2003. In all of the other removed cases, the parties and the courts are waiting for the Defendant to file its response to the plaintiffs' motions to remand.

f).     In all of the removed actions, the parties have agreed to postpone the Defendant's obligations under Rule 8 to answer or otherwise respond to the Plaintiffs' complaints and to postpone the commencement of discovery, including the parties' obligations under Rules 16 and 26, until after the District Courts rule on the pending remand motions.

2.     Although the Defendant has requested that all of the removed actions be transferred and consolidated in order to avoid potentially inconsistent pretrial rulings, the Defendant has not moved any of the proposed transferor District Courts to stay or defer their consideration of the various pending motions to remand. See Moore v. Wyeth-Ayerst Laboratories, 236 F.Supp.2d 509, 511 (D. Md. 2002) ("The Judicial Panel on Multidistrict Litigation has held that a district court judge has the authority to either wait for a transfer order without ruling on a motion to remand, or to rule on the motion before a transfer order has been issued.").

3.     Although the Plaintiffs obviously contend that none of the removed actions have been properly removed and that none of the removed actions fall within the limited subject matter jurisdiction of the federal courts, should a significant number of the proposed transferor District Courts deny the Plaintiffs' motions to remand and retain jurisdiction over their respective cases, the Plaintiffs do not oppose transfer

3

and consolidation in a single federal forum. Similarly, the Plaintiffs do not object to the Defendant's suggestion of the District of Connecticut as the proposed transferee court. The Plaintiffs contend, however, that the Defendant's theory of removal is so specious that this Panel should afford the respective proposed transferor District Courts the opportunity to rule on the pending motions to remand.

    4.    The Plaintiffs are aware that this Panel may order a transfer and consolidation pursuant to § 1407 despite a pending objection to the proposed transferor court's subject matter jurisdiction. See In re Ivy, 901 F.2d 7, 9 (2d Cir. 1990); In re Adelphia Communications Corp. Securities & Derivative Litigation (No. II), No. MDL-1529, 2003 WL 21749524, *1 (Jud.Pan.Mult.Lit., July 23, 2003) (pending motions to remand to state court can be presented to and decided by the transferee court); In re Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litigation, 229 F.Supp.2d 1377, 1378 (Jud.Pan.Mult.Lit. 2002) ("We note that any pending motions to remand these actions to their respective state courts can be presented to and decided by the transferee judge."); In re Enron Corp. Securities, Derivative & "ERISA" Litigation, 227 F.Supp.2d 1389, 1391 (Jud.Pan.Mult.Lit. 2002) ("[R]emand and other motions, if not resolved in the transferor court by the time of Section 1407 transfer, can be presented to and decided by the transferee judge.").

    5.    The Plaintiffs are also aware that this Panel has held that the inherent time lag involved with transfer and consolidation under § 1407 affords most transferor courts sufficient opportunity to rule on a pending motion to remand should the court be so inclined.  In In re Prudential Insurance Company of America Sales Practices Litigation, 170 F.Supp.2d 1346, 1347-48 (Jud.Pan.Mult.Lit. 2001), the Panel observed:

The plaintiff premises part of his opposition to transfer on the pendency in his action of a motion to remand to state court. He urges the Panel not to order transfer before the motion is resolved by the transferor court. We note, first, that remand motions can be presented to and decided by the transferee judge. Furthermore, there is no need to delay transfer in order to accommodate any interest of the transferor court in resolving a pending remand motion. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer, briefing on the question of transfer, the Panel hearing session, and the issuance of the Panel's subsequent order; 2) Panel Rule 1.5, R.P.J.P.M.L., 199 F.R.D. at 427, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer ... can continue without any unnecessary interruption or delay.

170 F.Supp.2d at 1347-48 (citations omitted). See also In re Asbestos Products Liability Litigation, 170 F.Supp.2d 1348, 1349 n. 1 (Jud.Pan.Mult.Lit. 2001) ("[T]hose courts wishing to address [motions to remand] have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them....").

   6. The Plaintiffs' only concern is that their candid recognition of this Panel's prior decisions and their acquiescence in allowing the process to run its course does not inadvertently shorten the normal "lag time of at least three or four months" involved in these proceedings. Each of the various District Courts currently have before them the Plaintiffs' motions to remand and are in the process of receiving the parties'

briefs and arguments for and against the exercise of removal jurisdiction.   It is anticipated, particularly in light of Judge Goetell's recent ruling, that each of the various District Courts will have the opportunity to consider and rule on the Plaintiffs' motions to remand within the normal three to four month lag time.

7.      The Defendant's justification for transfer and consolidation is that allowing the various cases to proceed in the various proposed transferor courts "involves significant risk of conflicting or inconsistent pretrial rulings" (Defendant's Motion for Transfer at 9). As the Defendant's motion concedes, however, "[t]he litigation in all the pending actions is at its incipient stages.  No discovery has been served or provided, no motions have been filed and no hearings or conferences have been held or scheduled with the exception of a motion to remand." (Defendant's Motion for Transfer at 14).  At this point, moreover, there is no immediate risk of "inconsistent pretrial rulings" or "duplicative discovery requests" because the parties in each of the removed cases have agreed to postpone the Defendant's obligations under Fed.R.Civ.P. 8 to answer or otherwise respond to the Plaintiffs' complaints and to postpone discovery, including the parties' obligations under Fed.R.Civ.P. 16 and 26, until after the District Court rules on the remand motion.

8.      The Plaintiffs do contend, however, that the Defendant's Motion for Transfer in the present case involves an improper attempt to misuse 28 U.S.C. § 1407 by interfering with and delaying the prosecution of Plaintiffs' state court claims and to facilitate the consummation of a collusive and abusive class action settlement in Illinois state court.  See In re Highway Accident Near Rockville, Connecticut, on Dec. 30, 1972, 388 F.Supp. 574 (Jud.Pan.Mult.Lit. 1975) (misuse of statute is consideration in transfer);

In re Truck Accident Near Alamagordo, New Mexico on June 18, 1969, 387 F.Supp. 732 (Jud.Pan.Mult.Lit. 1969) (same).  The misuse of the statute is illustrated by the following facts and circumstances:

       a).     The Defendant has removed eight (8) cases from the state courts in which they were filed based on the assertion that the cases implicated the various District Courts' federal question jurisdiction because the Plaintiffs' claims involved a federal question so substantial that only the federal courts could exercise jurisdiction over the cases.  The Defendant has vigorously opposed the Plaintiffs' motions to remand based on the argument that the present cases fall within the District Courts' exclusive federal question jurisdiction and that federal law preempts any possible state court involvement. Indeed, the Defendant has argued that only the federal courts are authorized and qualified to decide the issues of federal law presented by these cases.

       b).     Unbeknownst to the Plaintiffs, however, while the parties and the various District Courts were wrestling with the remand issues, the Defendant was secretly negotiating and entering into a "Class Action Settlement Agreement" purporting to settle the very claims being asserted by the Plaintiffs in the present cases.[2]  Incredibly, despite the Defendant's position that the present case involved substantial and overriding questions of federal law, the Defendant chose to try to settle these claims not in a federal court, but in an Illinois state court.  In other words, at the very time that it was arguing to a half dozen or so District Courts that the Plaintiffs had no right to bring and maintain

---

[2] Counsel for the Plaintiffs learned about the purported settlement on September 2, 2003 when one of the Plaintiffs' attorneys was contacted by the media.  Plaintiffs' counsel obtained a copy of the "Class Action Settlement Agreement" by accessing www.noticeclass.com/SpringWaterSettlement as directed in the class notice.

their cases in state court, the Defendant was finalizing a settlement that vested in a state court the full authority to settle and resolve these very claims. Despite arguing to these District Courts that the state courts from which the various cases were removed were incompetent to handle these "uniquely federal" claims, the Defendant was more than content to submit itself and the plaintiffs' claims to the jurisdiction of the state courts in Illinois.

      c).    Further, despite the fact that it was contesting remand in eight different cases and asking this Panel to transfer all of these cases to the District of Connecticut, the Defendant failed to disclose the pending Illinois state court case or the existence of the purported settlement to any of the District Courts or to this Panel. Rules 7.2(i) and 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation require "any party or counsel" in actions being considered for transfer to promptly notify the Clerk of the Panel of any potential "tag-along" actions "in which that party is also named or in which that counsel appears." Although it does not appear that these Rules technically required the Defendant to notify this Panel of the Illinois state court case because it was not pending in (nor, apparently, was it going to be removed to) federal court, the Defendant's failure to disclose the facts and circumstances surrounding the proposed Illinois settlement would seem to violate the spirit of the Rules.

      d).    Even if not an express violation of this Panel's Rules, the Defendant and its counsel have an on-going ethical obligation to disclose to the various District Courts and to this Panel that there is a pending State court action that the Defendant have no intention of removing to federal court. At the very least, the Defendant had an obligation to disclose to the various District Courts and to this Panel

that it had entered into a purported settlement of the very claims being asserted by the Plaintiffs in the cases that it seeks to have transferred and consolidated. See Cleveland Hair Clinic, Inc. v. Puig, 200 F.3d 1063, 1067 (7th Cir. 2000) (Attorney for defendants in federal lawsuit had a duty to disclose a state lawsuit he had prepared and that was simultaneously being filed in attempt to obtain records from the federal plaintiff after federal district court denied motion for temporary restraining order seeking those records, at hearing to decide whether the state plaintiff should be added as a party in the federal case and whether to enjoin any state action. "Counsel have a continuing duty to inform the Court of any development which may conceivably affect the outcome of the litigation. The goal of the state lawsuit was to cut off the federal court at the pass, a development that surely could have affected the outcome of the litigation pending in federal court."); see also BEM I, L.L.C. v. Anthropologie, Inc., 301 F.3d 548, 551 (7th Cir. 2002) ("Lawyers also owe it to the judge and the opposing lawyer to avoid subjecting them to the burdens of a lawsuit that they know or think may eventually be set at naught, and have to be started over again in another court, because of a jurisdictional problem of which the judge and the opposing lawyer may be unaware."); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir.1994) ("[E]very lawyer is an officer of the court. And, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal."); In re Universal Minerals, Inc., 755 F.2d 309 (3d Cir. 1985) (Counsel have a continuing duty to inform court of any development which may conceivably affect outcome of litigation, even where new developments, new facts, or recently announced law may be unfavorable to interests of the litigant); Seeds v.

Lucero, 207 F.Supp.2d 1297, 1301 (D.N.M. 2002) ("While counsel has a duty to zealously represent his clients, he has a higher duty of candor to this tribunal.").

e).    The Defendant has removed eight cases to various federal courts around the country and asked that they all be consolidated in one District under the theory that the federal courts are exclusively empowered to decide the claims asserted by the plaintiffs.  At the same time, however, the Defendant has declined to remove a similar, if not identical, case pending in Illinois in order to try to settle these very claims in a state court.  The Defendant's position, therefore, is that it has the option of litigating these issues in state court, but the Plaintiffs do not.

f).    It is apparent that the Defendant has used the removal of the various cases and the proceedings before this Panel in any effort to hinder and delay the Plaintiffs state court litigation.  As then Justice Rehnquist observed:

> The removal jurisdiction extended by Congress works a significant interference in the conduct of litigation commenced in state court. While Congress felt that making available a federal forum in appropriate instances justifies some such interruption and delay, it obviously thought it equally important that when removal to a federal court is not warranted the case should be returned to the state court as expeditiously as possible. **If this balanced concern is disregarded, federal removal provisions may become a device affording litigants a means of substantially delaying justice.**

Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 354-55 (1976) (Rehnquist, J., dissenting)(emphasis added), abrogated by, Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996)(cited with approval in Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d 116, 126 (2d Cir. 2003)).

WHEREFORE, despite the Defendant's apparent misuse of the removal statutes and of 28 U.S.C. § 1407, the Plaintiffs do not oppose transfer and consolidation of these actions in the United States District Court for the District of Connecticut so long as the respective transferor courts are given a reasonable opportunity to consider and rule on the Plaintiffs' pending motions to remand.

DATED:       September 3, 2003

_____
Barry A. Ragsdale

**OF COUNSEL:**

IVEY & RAGSDALE
1615 Financial Center
505 North 20th Street
Birmingham, Alabama 35203
(205) 327-5223

Attorneys for Monica Bliss-Weick, Muire Cosgrove, Daniel Gaito, Ticia Joseph, Deborah Kuhn, Lisa McGonagle, Michelle Savalle, and SDB Trucking, LLC

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP - 4 2003

FILED
CLERK'S OFFICE

In re NESTLE WATERS NORTH        §
AMERICA, INC. MARKETING
LITIGATION                       §        **MDL No. 1569**

**PROOF OF SERVICE**

I hereby verify under penalty of perjury that, on September 3, 2003, I caused a true and correct copy of the **"Consolidated Response To Motion For Transfer"** filed with the Clerk of the Judicial Panel on Multidistrict Litigation, to be served on the attorneys reflected on the attached Panel Attorney Service List by placing a copy of the same in the United States mail, properly addressed and first class postage prepaid.

DATED:        September 3, 2003

Barry A. Ragsdale

**OF COUNSEL:**

IVEY & RAGSDALE
1615 Financial Center
505 North 20th Street
Birmingham, Alabama 35203
(205) 327-5223

Attorneys for Monica Bliss-Weick, Muire Cosgrove, Daniel Gaito, Ticia Joseph, Deborah Kuhn, Lisa McGonagle, Michelle Savalle, and SDB Trucking, LLC

**Judicial Panel on Multidistrict Litigation - Panel Attorney Service List**

Page 1

Docket: 1569 - In re Nestle Waters North America, Inc., Marketing Litigation

Status: Pending on  / /

Transferee District:          Judge:

Printed on 08/26/2003

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Garrod, Jeffrey M.<br>Orloff, Lowenbach, Stifelman & Siegel<br>101 Eisenhower Parkway<br>4th Floor<br>Roseland, NJ 07068 | ⇒ Nestle Waters North America, Inc.* |
| Harke, Lance A.<br>Harke & Clasby<br>155 South Miami Avenue<br>Suite 600<br>Miami, FL 33130 | ⇒ Maravilla, Scott* |
| Ragsdale, Barry A.<br>Ivey & Ragsdale<br>1615 Financial Center<br>505 North 20th Street<br>Birmingham, AL 35203 | ⇒ Bliss-Weick, Monica*; Cosgrove, Muire*; Gaito, Daniel*; Joseph, Ticia*; Kuhn, Deborah*; McGonagle, Lisa*; Savalle, Michele*; SDB Trucking, LLC* |

Note: Please refer to the report title page for complete report scope and key.



**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
----------------------------------X
MICHELE SAVALLE and SDB             :
TRUCKING, LLC, on behalf of         :
themselves and all others           :
similarly situated,                 :
                                    :
              Plaintiffs,           :     **MEMORANDUM DECISION**
                                    :     **3: 03 CV 1204 (GLG)**
              -against-             :
                                    :
NESTLÉ WATERS NORTH AMERICA, INC.,  :
                                    :
              Defendant.            :
----------------------------------X

The plaintiffs move to remand [Doc. # 8] this action to the
Superior Court of Connecticut from which it was removed by the
defendant.  The defendant's removal notice claims the existence
of a federal question pursuant to 28 U.S.C. § 1331.  The statute
itself creates no right of action.  Rather, the presence of
federal question jurisdiction is governed by the "well pleaded
complaint" rule.  Merrell Dow Pharmaceuticals Inc. v. Thompson,
478 U.S. 804, 808 (1986).  "To determine whether the claim arises
under federal law, we examine the 'well pleaded' allegations of
the complaint and ignore potential defenses: 'a suit arises under
the Constitution and laws of the United States only where the
plaintiff's statement of his own cause of action shows that it is
based upon those laws or that Constitution.'"  Beneficial Nat'l
Bank v. Anderson, — U.S. —, 123 S. Ct. 2058, 2062 (2003) (quoting
Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152
(1908)).

1

The plaintiffs' complaint seeks relief concerning the
defendant's bottling, advertising, promotion, and sale of Poland
Spring brand bottled water.  The plaintiffs assert claims for
violations of Connecticut's Unfair Trade Practices Act ("CUTPA"),
Conn. Gen. Stat. §§ 42-110a et seq., Connecticut's Consumer
Protection Act, Conn. Gen. Stat. § 21a-150g (governing
information displayed on bottled water packages), violations of
the unfair trade practices statutes of forty-three (43) other
states, and unjust enrichment under state law.  Thus, as alleged
in the complaint, all of the plaintiffs' claims arise out of and
are based solely on state law.  It is beyond dispute that their
complaint does not affirmatively allege a federal claim.  Indeed,
their complaint does not rely on or even refer to any federal law
or statute.

The defendant argues that an essential element of the
plaintiffs' claims is whether the Poland Spring brand of bottled
water meets the standard of identity for "spring water," which is
determined by federal law, specifically the Federal Food, Drug
and Cosmetic Act, 21 U.S.C. §§ 301-397 ("FDCA"), and the
regulations adopted thereunder, 21 C.F.R. § 165.110(a)(2)(vi).
"Plaintiffs' complaint presents a substantial question of federal
law which they artfully plead as a state law cause of action."
(Def.'s Removal Notice ¶ 4.)

As both sides recognize, an "independent corollary to the

2

well-pleaded complaint rule is the further principal that a

plaintiff may not defeat removal by omitting to plead necessary

federal questions." Rivet v. Regions Bank of Louisiana, 522 U.S.

470, 475 (1998) (citations and internal quotations omitted).

This corollary, known as the "artful pleading doctrine," allows

federal courts to exercise jurisdiction even when a federal claim

does not appear on the face of the complaint if (1) federal law

has completely preempted the state law that serves as the basis

for the plaintiff's complaint,[1] see Avco Corp. v. Aero Lodge No.

735, 390 U.S. 557 (1968); Metropolitan Life Ins. Co. v. Taylor,

481 U.S. 58 (1987); or (2) the plaintiff's right to relief

necessarily depends on the resolution of a substantial question

of federal law.  See Franchise Tax Board v. Construction Laborers

Vacation Trust, 463 U.S. 1, 9 (1983); see generally Moore's

Federal Practice § 107.14[4][a] (3d ed. 2003); Wright, Miller &

Cooper, Federal Practice and Procedure: Jurisdiction § 3722 (3d

ed. 1998).  In this case, the defendant does not argue complete

federal preemption.  Rather, it asserts that the plaintiffs'

state-law claims present a "substantial question of federal law."

The plaintiffs respond that the use of a federal statute as an

_____

    [1]  The "complete pre-emption corollary to the well-pleaded
complaint rule," provides "that any claim based on preempted
state law is considered a federal claim arising under federal
law."  Vera v. Saks & Co., 335 F.3d 109, 113-14 (2d Cir. 2003)
(internal citations omitted) (applying this corollary to state-
law claims preempted by the Labor Management Relations Act, 29
U.S.C. § 185).

element of their state-law causes of action is insufficient to
justify removal, citing Merrell Dow Pharmaceuticals (holding that
the incorporation of a federal standard in a state-law private
action, when no cause of action exists for violations of that
federal standard, does not make the action one "arising under the
Constitution, laws, or treaties of the United States").

In this case, the federal statute on which the defendant
relies, the FDCA, does not provide a private right of action.
This factor was significant to the majority's holding in Merrell
Dow Pharmaceuticals.

> The significance of the necessary assumption
> that there is no federal private cause of
> action [under the FDCA] cannot be overstated.
> For the ultimate import of such a conclusion,
> as we have repeatedly emphasized, is that it
> would flout congressional intent to provide a
> private federal remedy for the violation of
> the federal statute.  We think it would
> similarly flout, or at least undermine,
> congressional intent to conclude that the
> federal courts might nevertheless exercise
> federal-question jurisdiction and provide
> remedies for violations of that federal
> statute solely because the violation of the
> federal statute is said to be a "rebuttable
> presumption" or a "proximate cause" under
> state law, rather than a federal action under
> federal law.

478 U.S. at 812 (footnote omitted).  The Court concluded that
"the congressional determination that there should be no federal
remedy for the violation of this federal statute is tantamount to
a congressional conclusion that the presence of a claimed
violation of the statute as an element of a state cause of action

4

is insufficiently 'substantial' to confer federal-question

jurisdiction."  Id. at 814; see also Loussides v. America Online,

Inc., 175 F. Supp. 2d 211, 214 (D. Conn. 2001) (holding that when

a complaint alleges a violation of a federal statute as an

element of a state cause of action, but there is no private,

federal cause of action for the violation, the presence of the

claimed violation is insufficient to confer jurisdiction);

Jackson v. Purdue Pharma Co., No. 6:02-CV-1428ORL12KRS, 2003 WL

21356783, at *6 (M.D. Fla. Apr. 11, 2003) (holding that, in order

to prevail under the substantial federal question doctrine, the

defendants would have to show that the FDCA created the rights

that the plaintiff sought to vindicate and a private cause of

action to enforce such rights); Campbell v. SmithKline Beecham,

919 F. Supp. 173, 176 (E.D. Pa. 1996) (holding that no

"substantial, disputed question of federal law" may exist when

the federal law in question may not be enforced in a private

cause of action).

     The defendant here, like the petitioner in Merrell Dow

Pharmaceuticals, also argues that the strong federal interest in

insuring uniform interpretation of federal statutes and

regulations is best served by review of this case in the federal

courts.  In rejecting a similar argument, the Supreme Court noted

that concern about the uniformity of interpretation of the FDCA

was "considerably mitigated" by the fact that it retained the

power to review the decision of a federal issue in a state cause of action, even if there was no original district court jurisdiction.  478 U.S. at 816.

We find controlling the decision of the Supreme Court in Merrell Dow Pharmaceuticals.  In that case, as here, the federal statute was merely incorporated as a standard of conduct in a state cause of action.  See West 14th St. Commercial Corp. v. 5 West 14th Owners Corp., 815 F.2d 188, 196 (2d Cir.), cert. denied, 484 U.S. 850 (1987).  Borrowing or importing a standard from a federal statute or regulation does not make a state cause of action removable.  "The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  Merrell Dow Pharmaceuticals, 478 U.S. at 813.

The burden was on the defendant to establish federal-question jurisdiction.  The defendant has failed to carry that burden.  Consequently, we hold that the removal of the action was improvident and improper.  Pursuant to 28 U.S.C. § 1447(c), this case is remanded to the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport.

SO ORDERED.

Dated:  August 29, 2003.
        Waterbury, Connecticut.

GERARD L. GOETTEL,
United States District Judge

6

B

IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL
CIRCUIT COURT, KANE COUNTY, ILLINOIS

| | |
|---|---|
| **KENNETH RAMSEY,**<br>**on behalf of himself and all others similarly**<br>**situated,** | ) <br> ) <br> ) <br> ) |
| **Plaintiff,** | ) <br> ) <br> ) |
| v. | ) **Case No.  03 CHK 817** <br> ) |
| **NESTLE WATERS NORTH AMERICA INC.,**<br>**d/b/a POLAND SPRING WATER CO.,** | ) **Judge Michael J. Colwell** <br> ) |
| **Defendant.** | )**Dated:  August 20, 2003** |

CLASS ACTION SETTLEMENT AGREEMENT
BETWEEN PLAINTIFF AND NESTLE WATERS NORTH AMERICA, INC. d/b/a
POLAND SPRING WATER CO.

THIS CLASS ACTION SETTLEMENT AGREEMENT ("Agreement"), dated as of

August 20, 2003 is entered into by KENNETH RAMSEY, the Class Plaintiff, individually on

behalf of himself and the Settlement Class, and Defendant NESTLE WATERS NORTH

AMERICA INC. d/b/a POLAND SPRING WATER CO.  (hereinafter "DEFENDANT"), each

through their counsel of record in the Action (as defined below), and subject to the approval

of the Court to fully settle the Action and release all claims on the terms and conditions set

forth below.

I.     BACKGROUND AND DESCRIPTION OF THE ACTION

1.1     On July 29, 2003, KENNETH RAMSEY commenced a nationwide class action

lawsuit on behalf of himself and all other similarly situated purchasers and consumers of

Poland Spring  brand of bottled water and/or Poland Spring brand of spring water products

1

(hereinafter referred to collectively as "Poland Spring Water") entitled *Kenneth Ramsey, on behalf of himself and all others similarly situated v. Poland Spring Water Co., and Nestle Waters North America Inc., Case No. 03 CHK 817* (Kane County, Illinois).

     1.2    Plaintiff's complaint alleges numerous statutory and common law violations including: common law fraud; statutory fraud; Connecticut Unfair Trade Practices Act, Illinois Consumer Fraud and Deceptive Trade Practices Act and other similar state consumer protection laws and unfair and deceptive practices acts, including, but not limited to New Jersey, Massachusetts, Florida and Alabama; unjust enrichment; breach of implied warranty of good faith and fair dealing; and breach of contract. The complaint alleges that the labeling and advertising of the Poland Spring Water is false, misleading, or potentially misleading in that the products allegedly are not: (1) "spring water" as defined by the Food & Drug Administration standard of identity codified at 21 C.F.R. §165.110 and/or any applicable local and state regulations defining what constitutes "spring water"; (2) from the geographic or geologic sources as represented; and (3) as pure and healthful as represented. The complaint seeks restitution, compensatory and punitive damages, disgorgement of profits, injunctive relief, attorney fees and costs.

     1.3    Throughout the litigation, Plaintiff and Defendant have met from time to time to discuss settlement. During the summer of 2003, Plaintiff and Defendant met numerous times and communicated frequently regarding settlement. Plaintiff and Defendant agreed to facilitate a possible settlement by proceeding to mediation in July.

     1.3.1   During the last two weeks of July and August, 2003, Plaintiff and Defendant negotiated this Agreement (effective as of August 20, 2003). Plaintiff propounded extensive and detailed interrogatories and requests for production of documents on

2

Defendant. Defendant made appropriate responses to both Plaintiff's interrogatories and requests for production of documents.

1.3.2  On July 30, 2003, Plaintiff communicated to Defendants a structure for settlement which included a proposal for injunctive relief, i.e., monitoring of spring sites, and a proposal for monetary relief.

1.3.3  On August 1, 2003, Defendants responded to Plaintiffs' injunctive relief proposal and presented a detailed monitoring plan for Defendants' Spring Sources.

1.3.4   On August 5th, 6th and 7th, Plaintiff and Class Counsel conducted inspections of all Defendants' spring sites and its Maine plants.  Plaintiff and Class Counsel also interviewed numerous employees of Defendants, including but not limited to, the vice-president of Corporate Affairs, the Group Marketing Manager, the Director of Supply Chain, the Natural Resource Manager, the Community Relations Manager, the Director of Health and Environmental Affairs, hydrogeologists, plant managers, and water treatment and bottling plant employees.  Defendant made said individuals available for an unlimited period of time and permitted extensive evaluation, questioning, cross-examination and examination of said individuals by both Plaintiff and Defense counsel.

1.3.5  Both parties consulted experts, and elicited expert opinions regarding the underlying facts in dispute.  For settlement purposes only, both parties reviewed, disclosed and made available to one another expert opinions, reports and studies.

1.3.6  On August 7, 2003, Plaintiff made a reply proposal for injunctive relief and monetary damages.  On August 11, 2003, Defendants made another response proposal to Plaintiff and Plaintiff responded.

1.3.7   Also on August 11, 2003, Plaintiff filed his Amended Class Action Complaint.

3

1.3.8  On August 13, 2003, Plaintiff and Defendant agreed on monetary relief and Defendant communicated another offer regarding injunctive relief.

1.3.9  On August 14, 2003, Plaintiff responded to Defendants offer relating to injunctive relief and proposed several substantive changes.

1.3.10  On August 15, 2003, Defendant provided Plaintiff with a response and proposed changes.

1.3.11 On August 18, 2003, Plaintiff and Defendant agreed to all substantive provisions of the Settlement Agreement.

1.3.12 On August 20, 2003, Plaintiff and Defendant entered into and executed this Settlement Agreement.

1.3.13 From July 31, 2003 to August 18, 2003,  Defendant produced numerous documents and information for purposes of settlement only, including but not limited to, information related to spring sites, spring site monitoring, financial data regarding its sales and revenues, and agreed that Plaintiff could make such data available to Plaintiff's forensic economist.

1.3.14 On August 8, 2003, the Honorable Charles B. Renfrew (retired federal court judge) was contacted to discuss issues related to the ongoing settlement discussions and to determine whether Judge Renfrew would be interested in being designated as the "arbitrator" and/or "mediator" for purposes of post-settlement dispute resolution.  Judge Renfrew was jointly selected by the parties as "arbitrator" and/or "mediator" due to his knowledge and expertise related to spring water litigation and his involvement in a nearly identical lawsuit (against the same Defendant) related to two other of Defendant's brands, entitled *Tara Fields, et. al.  v.  Great Spring Waters of America, Inc. d/b/a Arrowhead*

4

*Mountain Spring Water Co., et. al. Case No. 302774* (Superior Court for the County of San Francisco, State of California).   On August 8, 2003, Judge Renfrew agreed to be designated as "arbitrator" and/or "mediator" in the event the parties were to reach a settlement of this matter.

1.3.15 The substantive terms of this Settlement Agreement were finalized on August 18, 2003 and this Agreement was fully executed on August 20, 2003.

1.4     This Agreement is the product of extensive investigation, settlement negotiations and mediation.   Both class counsel and defense counsel have made a thorough analysis of the facts and law applicable to the claims asserted in this action. During the pendency of the action, both parties have engaged in substantial discovery.

1.5     As set forth in greater detail below, the parties have determined that they wish to reach an amicable resolution to the pending action.

NOW, THEREFORE, it is hereby stipulated and agreed by the Class Representative and the Defendant, and through their respective counsel, that subject to the approval of the Court, the Action and the Released Claims shall be finally and fully settled on the terms and conditions set forth in this Agreement.

## 2. DEFINITIONS

The following terms shall have the meanings set forth below:

2.1     "Action" means the putative class action now pending against Defendant in the Sixteenth Judicial Circuit Court, Kane County, Illinois entitled *Kenneth Ramsey, on behalf of himself and all others similarly situated v. Poland Spring Water Co., and Nestle Waters North America Inc., Case No. 03 CHK 817* (Kane County, Illinois) amended (August

5

11, 2003) *Kenneth Ramsey, on behalf of himself and all others similarly situated v. Nestle Waters of North America Inc. d/b/a Poland Spring Water Co.*

2.2     "Agreement" means this Final Class Action Settlement Agreement, including all Exhibits.

2.3     "Class Counsel" means Attorney Robert M. Foote, Esq. of FOOTE, MEYERS, MIELKE & FLOWERS, LLC and Attorney Kathleen C. Chavez, Esq. of the CHAVEZ LAW FIRM.

2.4     "Class Representative" means KENNETH RAMSEY, both individually, and in his capacity as class representative for the putative class against Defendant, and in his capacity as class representative for the Settlement Class as provided for in paragraph 8.1.

2.5     "Complaint" means the Complaints filed in this Action against Defendant.

2.6     "Counsel for Defendant" means the law firms of Orloff, Lowenbach, Stifelman & Siegel, P.A. and Farella Braun & Martel LLP.

2.7     "Court" means the Circuit Court for the Sixteenth Judicial Circuit, Kane County, Illinois.

2.8     "Defendant" means NESTLE WATERS NORTH AMERICA INC. d/b/a POLAND SPRING WATER CO.

2.9     "Effective Date" means the first date by which all the events and conditions specified in paragraph 13 of this Agreement have been met and have occurred.

2.10    "Final Judgment" means the Final Judgment and Order of Dismissal of the Class Action provided for in paragraphs 10.1 through 10.12.

6

2.11   "Notice of Proposed Settlement" means the Notice of Pendency and Proposed Settlement Class Action and Settlement Hearing provided for in paragraph 9.8.

2.12   "Parties" means the Class Representative, on behalf of himself, and members of the Settlement Class, and the Defendant.

2.13   "Person" means a natural person, individual, corporation, association, partnership, trust, and any other type of legal business entity and their spouses, heirs, predecessors, successors, representatives or assignees.

2.14   "Preliminary Order" means the order certifying the Settlement Class, approving the Notice of Proposed Settlement, and setting the Final Settlement Hearing, as provided for in paragraphs 9.1 through 9.16.

2.15   "Related Persons" means the Defendant's past or present directors, officers, employees, partnerships and partners, principals, agents, controlling shareholders, any entity in which the Defendant has a controlling interest, or which directly or indirectly has a controlling interest in Defendant, attorneys, accountants, auditors, advisors, experts, consultants, insurers, co-insurers and reinsurers, predecessors, successors, partners, subsidiaries, divisions, assigns, joint ventures and joint venturers, related or affiliated entities, individuals or entities who are landowners from whom Defendant has obtained water, suppliers of bulk water, and all others acting in concert with Defendant.

2.16   "Released Claims" means without limitation any and all claims, actions, demands, rights, liabilities, suits, causes of action, (including, but not limited to, all causes of action for unjust enrichment, constructive trust, breach of contract, fraud, misrepresentation, suppression, concealment, breach of warranty, violation of any state or federal consumer protection or unfair trade practices statutes, including, but not limited to,

7

the Illinois Consumer Fraud Act, the Connecticut Unfair Trade Practices Act, the Massachusetts general law G.93A, the New Jersey Consumer Fraud Act, the Florida Deceptive and Unfair Trade Practices Act, and the Alabama Deceptive Trade Practices and Consumer Protection Act), claims for damages, claims for injunctive relief, claims for disgorgement of monies, claims for declaratory relief, claims for equitable relief, of every nature and description whatsoever, including Unknown Claims, as defined below,      that were asserted or that could or might have been asserted in any pleading or amended pleading by, or on behalf of the Class Representatives or Settlement Class, or by any of the other Settlement Class Members against Defendant or its Related Persons, based upon, arising from, or related to the facts alleged in such pleadings, including, but not limited to: (1) the labeling and advertising of Poland Spring brand bottled water products as stating or implying that the water is "spring water" or "natural"; (2) the labeling and advertising of Poland Spring brand bottled water products as stating or implying that the water comes from sources "deep in the woods of Maine" and/or are "exceptionally well-protected by nature"; (3) the labeling and advertising of Poland Spring brand bottled water products as stating or implying that the water comes from, in or near the town of Poland, Maine; (4) the labeling or advertising of Poland Spring brand bottled water products as stating or implying that the water is more pure or healthful by virtue of being spring water, than it actually is; (5) the labeling or advertising of Poland Spring brand bottled water products as stating or implying that it comes from the same aquifer or spring as the original Poland  Spring water source that existed in 1845; and/or (6) the facts, transactions, events, occurrences, disclosures, statements, acts or omissions or failures to act which were or could have been alleged in the Action or in any similar action based upon the same facts.

8

2.17   "Released Persons" means Nestle Waters North America, Inc. d/b/a Poland Spring Water Co., Poland Spring Water Co., and all Related Persons.

2.18   "Releasor" means, without limitation, the Plaintiff, and each and all of the Settlement Class Members whose claims are released pursuant to Section 11 of this Agreement.

2.19   "Settlement Class" means:

"All persons and/or entities who have purchased and/or consumed Poland Spring brand of bottled water and/or Poland Spring brand of spring water products within the United States of America any time during the period January 1, 1996 to the present.  Excluded from the class are Defendants, their subsidiaries and affiliates, and any officers and directors thereof, as well as any judge presiding over this action, the judge's spouse and immediate family."

2.20   "Settlement Class Member" means a person who fits within the definition of Settlement Class (and that person's attorneys, legal representatives, successors, spouses, heirs, executors, administrators, and assigns who are acting on behalf of that person).

2.21   "Settlement Hearing" means the hearing or hearings to determine:  (1) whether the settlement of the Action should be approved as fair, reasonable and adequate; (2) whether a Final Judgment as provided in Section 10 of this Agreement should be entered; (3) whether a final order certifying the Settlement Class should be approved; and (4) whether the application of Class Counsel for an award of attorneys' fees, costs, and expenses pursuant to Section 12 of this Agreement should be approved, as provided for in paragraph 9.9.

9

2.22  "Settling Parties" means, collectively, the Defendant and the Class Representatives on behalf of themselves and Settlement Class Members.

2.23  "Unknown Claims" means any Claims which any Class Representative or Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this Agreement. With respect to any and all Released Claims against the Released Persons, the Parties stipulate and agree that, the Class Representative shall expressly waive and relinquish, and the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law any claim that was or could have been alleged within Plaintiff's Class Action Complaint. The Class Representative and the other Settlement Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the Released Claims, but hereby stipulate and agree that upon the entry of the Final Judgment and Order of Dismissal, the Class Representative fully, finally and forever settles and releases, and each other Settlement Class Member shall be deemed to, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims against the Released Persons, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the

10

subsequent discovery or existence of such different or additional facts.  The Settling Parties acknowledge that the foregoing waiver was bargained for and is a material element of the Agreement.

### 3.    BENEFITS OF THE SETTLEMENT

3.1    Class Counsel have made a thorough investigation of the facts and circumstances surrounding the allegations made in the Complaint.  Class Counsel have engaged in extensive investigation and discovery of the claims underlying this Action, including propounding document requests and interrogatories, taking extensive interviews and examination/cross-examination of Defendant employees, taking extensive interviews and examination/cross-examination of potential witnesses, providing and receiving expert disclosures and reports, and making extensive spring site, plant, property and bottling/shipping facility inspections.

3.2    In the course of discovery, plaintiff conducted site investigations of all Poland Spring sites, investigated and evaluated the geology of the sites and their surroundings in the State of Maine, many of which are located in remote areas.  Plaintiff's investigation included reviews of professional literature and information concerning the geology, hydrogeology and topography of the site locations.  Plaintiff also reviewed tests to assess water characteristics and chemical consistency and performed analyses of the results of the chemical breakdown of the water samples.

3.3  Class Counsel have reviewed and analyzed publicly available information and investigated the law applicable to their claims and to the defenses raised by Defendant.  Class Counsel has also extensively reviewed, analyzed, compared and contrasted the instant action with the facts, law and resolution of a recently settled class action case

11

against the same Defendant, alleging nearly identical claims, related to two other of Defendant's brands of spring water commonly known as "Arrowhead Brand Mountain Spring Water" and "Calistoga Brand Mountain Spring Water".

3.4    Class Counsel believe that it is in the best interest of the Class Members that this Action be settled on the terms and conditions set forth in this Agreement. Class Counsel reached that conclusion after evaluating the factual and legal issues in the Action, the benefits that the Settlement Class Members will receive as a result of the Action, and the risks and uncertainties of continued litigation, the expense that would be necessary to prosecute the Action through trial and through any appeals that might be taken, and the likelihood of success at trial.

## 4.    NO ADMISSION OF WRONGDOING AND LIABILITY

4.1    Neither this Agreement, nor any of its terms and provisions, nor the Final Judgment and Order of Dismissal, shall constitute an admission by the Defendant of any liability or wrongdoing whatsoever, nor is this Agreement a finding of the validity or invalidity of any allegations in the Complaint or of any of the Released Claims or a finding of any wrongdoing by the Defendant.  Neither this Agreement nor the Final Judgment shall be used or construed as an admission, concession, or presumption or inference of any fault, liability or wrongdoing by any Person.  Neither the Final Judgment, this Agreement, the fact of settlement and the settlement proceedings, nor the settlement negotiations, nor any related documents or facts, shall be offered or received in evidence against any Party for any purpose in any proceeding other than (i) in such proceedings as may be necessary to consummate or enforce this Agreement, or (ii) in any action against or by the Released

12

Persons, or any of them, to support a defense of *res judicata*, collateral estoppel, release, or other theory of claim preclusion, issue preclusion, or similar defense.

### 5.    MONETARY RELIEF

5.1    The Parties agree that it is not practicable to attempt to identify and locate each consumer who consumed and/or purchased Poland Spring brand bottled water and/or Poland Spring brand bottled water products during the class period or to determine how much of the products each consumer purchased.   The monetary relief in this case is therefore to be distributed as a fluid recovery fund, or under the doctrine of *cy pres*, but only as expressly set forth herein.

5.2    Defendant shall make total charitable donations in the amount of two million seven hundred and fifty thousand dollars ($2,750,000.00) in equal installments over a period of five years, running from the Effective Date.  Defendant shall make said charitable donations in the amount of five hundred and fifty thousand dollars ($550,000.00) per year for five years, running from the Effective Date of this Agreement.  These donations can be made in money or in kind.  If donations are made in kind by contributions of water products, the value of the donation for purposes of this section shall be the average retail price of the products as determined by independent industry reports or similar information.  If Class Counsel objects to the value claimed by Defendant, the value of any in kind donation shall be made by Judge Charles Renfrew.

5.3    The charitable donations identified in paragraph 5.2 shall be made to any U.S. charitable, educational, governmental or non-profit organization that promotes or engages in disaster relief (e.g., American Red Cross), watershed protection/environmental conservation (e.g., Sierra Club/Nature Conservancy), or human health/community support

(e.g., American Heart Association).  Upon request, but no more frequently than on an annual basis, Defendant shall report such donations to plaintiffs' counsel.

5.3.1  Each year, Plaintiff  shall designate, consistent with paragraph 5.3, one or more organizations to receive twenty-five percent (25%) of the charitable donations described in paragraph 5.2.  Each year,  Defendant shall designate, consistent with paragraph 5.3, one or more organizations to receive seventy-five percent (75%) of the charitable donations described in paragraph 5. 2.  Both parties shall notify each other and Judge Renfrew of those designations and allocations within 120 days of the Effective Date and thereafter, annually on or before the anniversary of the Effective Date. Each party shall have a period of 10 days to object to this designation.  If either party desires to modify the designations after the designation period provided for in this paragraph, said party shall notify the other party and Judge Renfrew of its desire to do so and the other party shall have a period of 10 days to object to this proposed modification.  Any disputes regarding the designation of charitable organizations shall be submitted to Judge Renfrew or his successor in accordance with the procedures set forth in paragraph 14.4, and Judge Renfrew shall have complete authority to decide all issues regarding the designations provided for in this paragraph.

5.4     Defendant shall provide to consumers, in the manner provided in this section, product discounts on Poland Spring Water products from its then current list price for direct sales to consumers, or provide directly to consumers product discount coupons, which may include, among other things, "point-of-sale" coupons. The cumulative face value of these discounts or coupons over the five year period shall total eight million fifty thousand dollars ($8,050,000.00), or one million six hundred and ten thousand dollars ($1,610,000.00) per

14

year for five years running from the Effective Date. Defendant agrees that if the cumulative annual redemption amount is less than four hundred thousand dollars ($400,000.00) per year for each year of the five year period, then Defendant shall make additional donations to the organizations specified in Section 5.3 of this Agreement in the amount of the difference between four hundred thousand dollars ($400,000.00) per year and the actual amount of redeemed coupons and discounts obtained. Any mail-in coupon or rebate shall not be considered as part of these requirements unless redeemed.

   5.4.1   Defendant may offer consumers who receive home or office delivery of Poland Spring Water products discount coupons which shall be the greater of ten percent (10%) of the retail value of the product or fifty cents (50¢);

   5.4.2   Defendant may offer consumers who receive home or office delivery of Poland Spring Water products free spring water products;

   5.4.3   Defendant may offer consumers who receive home or office delivery of Poland Spring Water products discounts on invoices;

   5.4.4   Defendant may distribute to consumers discount coupons for Poland Spring Water products which shall be the greater of ten percent (10%) of the retail value of the product or twenty-five cents (25¢);

   5.4.5   Defendant may offer to consumers at retail establishments discount coupons on Poland Spring Water products in an amount which shall be the greater of ten percent (10%) of the retail value of the product or twenty-five cents (25¢);

   5.4.6   Defendant may offer to consumers a free product sample with the purchase of Poland Spring Water products (e.g., buy five bottles and receive one additional bottle for no additional cost); or

5.4.7   Defendant will offer no less than ten percent (10%) of the product discounts described in paragraph 5.4 to consumers who purchase Poland Spring Water products from retail establishments.  Defendants will provide to class members who are currently receiving home and office delivery of Poland Spring Water products a product coupon, discount, and/or free product sample within one (1) year of the Effective Date of this Agreement.

5.5     The donations and product discounts or coupons described in paragraphs 5.1 through 5.4 are the only monetary relief Defendant shall pay or cause to be paid in connection with the settlement of the Released Claims other than to satisfy an award of attorneys fees, costs and expenses as provided for in Section 12, below.

## 6.     DEFENDANT'S CONTINUED USE OF THE TERM "SPRING WATER" AND USE OF SPRING WATER DERIVED FROM ITS CURRENT SPRING SOURCES

6.1     Plaintiff acknowledges that Defendant currently includes on its Poland Spring Water product labels the identity and location of the sources that provide the spring water. Defendant agrees to continue providing information regarding identity and location of spring water sources on its labeling for a period of five (5) years from the effective date of this Agreement.

6.2     The Parties agree that Defendant shall be permitted to continue to bottle, label and sell Poland Spring brand bottled water as "spring water" using all of the spring water sources it has used since January 1, 1996.  Nothing in this Settlement Agreement shall require that Defendant relabel its Poland Spring brand spring water products as anything other than spring water or alter its spring water advertising in any way with respect to the spring water sources it has used since January 1, 1996.

16

6.3     Defendant agrees that for a period of five (5) years from the Effective Date, it will not extract water from its Poland Spring facility that exceeds 350 million gallons per year, which amount is less than the amount set forth in the permit issued by the State of Maine.

6.4     Defendant agrees that over the next five (5) years, it will acquire new spring sources by purchase, lease or water contract within the state of Maine to meet increasing production demands of its Poland Spring Water.

6.5     Defendant agrees that it has not and will not for a period of five (5) years from the Effective Date obtain water from any source outside of the state of Maine for its Poland Spring brand bottled water products.

6.6     Defendant agrees that for a period of five (5) years from the Effective Date, to notify Class Counsel and Judge Renfrew of any de-certifications, investigations and/or failure to meet the requirements for certification of "spring water" by any local, state or federal government.

7.     **LONG TERM MONITORING**

7.1     As a condition of the settlement of this Action, Defendant will increase its long term monitoring of all of its spring water resources in Maine. The long term monitoring requirements set forth in this section go beyond that which is required by local, state and/or federal law, and thus provide additional protection for consumers.

7.2     Defendant shall monitor springs and accept or reject water as provided in this section for a period of five (5) years commencing from the Effective Date of this Agreement. "Reject" shall mean not using rejected water in Defendant's spring water products.

17

7.3    **Monitoring of source water turbidity by plants.**  Defendant shall Reject water in the following circumstances.  Defendant shall monitor and record turbidity levels for each tanker load received from the Garden Spring (in Poland, Maine) or Pure Mountain/Evergreen Spring (in Fryeburg, Maine) spring water sources.  Turbidity shall be measured by taking a sample from each tanker load and delivering that sample to the bottling plant's quality control laboratory on-site for analysis.  The turbidity shall be measured and recorded in a database.  Defendant shall obtain data for at least ninety percent (90%) of all incoming tanker loads as measured on an annual basis.  These records shall be available for inspection by Judge Renfrew or a representative of plaintiffs on request but not more frequently than quarterly.

7.4    **Criteria for "rejecting" source water by plants.**  Where the turbidity levels exceed 1.0 nephelometric turbidity units (NTU), and the average turbidity for a four tanker load average is greater than the average turbidity for the previous day by twenty five percent (25%) (plus or minus), subsequent loads will be rejected until the turbidity falls below 1.0 nephelometric turbidity units (NTU).  For example, where the average turbidity on a day exceeds 1.0 NTU, and four consecutive loads from a source have an average turbidity greater or less than the previous day's average turbidity by twenty five percent (25%) (e.g., day 1 average = 1.1 NTU and four loads on day 2 average = 1.28 NTU), Defendant would Reject all loads from that source until the turbidity falls below 1.0 NTU, subject to paragraphs 7.5 and 7.6 below.

7.5    **Requirement of correlation with storm event.**  Defendant may accept and need not Reject a tanker load based on the criteria in paragraph 7.4 if the measured changes in turbidity are not directly correlated with a storm event (defined as greater than

0.5 inches of rain over a 36 hour period, as measured by the nearest weather station) that occurred within 36 hours of the collection of water showing the change in turbidity.

7.6    **Procedure for appeal.** Defendant may accept a tanker load and challenge the application of paragraph 7.4 according to the following procedure. Within two weeks of the decision to accept a load that does not comply with paragraph 7.4, Defendant submits a written statement to Class Counsel that explains why Defendant believes that the water accepted was not under the direct influence of surface water, as defined by 40 C.F.R. § 141.2. Class Counsel must file a written rebuttal within two weeks of receiving Defendant's written statement    In preparing this rebuttal, Class Counsel, including designated representatives, will be given access to the records compiled under paragraph 7.3 within one week of the submission of Defendant's written statement. Judge Renfrew shall then review the written submissions and provide a determination of whether Defendant was entitled to accept the load.  If Judge Renfrew determines that Defendant should have rejected the load as "under the direct influence of surface water" as defined by 40 C.F.R. 141.2, Defendant shall be liable for an amount equal to the after tax profit on the amount of water received in the disputed load or loads.  The amount shall be paid as a charitable donation pursuant to the other provisions of the settlement agreement. Under no circumstances shall water that Defendant need not Reject under paragraph 7.5 be considered "under the direct influence of surface water."

7.7    **Monitoring of rain patterns.** Defendant shall install, within six (6) months following final approval of this settlement, install rain gauges at three locations: within the town of Fryeburg, Maine, within Defendant's property located in Hollis, Maine, and at Defendant's property located in Poland Spring, Maine. These rain gauges will be used to

19

provide the weather data with respect to these sites for purposes of this Long Term Monitoring Program. In determining the application of paragraph 7.5, the "nearest weather station" for the Garden Spring site shall be the weather station located under this paragraph at the Poland Spring site.

7.8    **On-site monitoring of turbidity.**   Defendant shall install, within six (6) months following final approval of this settlement, turbidity monitors at the Poland Spring, Maine site and at the Hollis, Maine site. The turbidity monitors will be placed at such a position to enable them to measure the turbidity of the water being collected for bottling at all of the boreholes being used on the site. If it is not possible to place a single turbidity monitor to measure the turbidity of the composite of all water being collected for bottling at the site, Defendant shall install whatever number of turbidity monitors are required so that no water enters the plant from any individual borehole without passing a turbidity monitor. The monitoring shall be continuous except for maintenance and repair activities. A datalogger shall record the turbidity level on an hourly basis.

7.9    **Turbidity by-pass at certain sites.**   In the event that turbidity levels measured pursuant to paragraph 7.8 exceed by twenty five percent (25%) the average turbidity for the previous 36 hours, and the turbidity average for the previous 36 hours and the level measured are both greater than 1.0 nephelometric turbidity units (NTU), Defendant will Reject the water so that it is not used for Defendant's spring water products until the turbidity level falls below 1.0 NTU. Defendant need not Reject the water based on the criteria in the previous sentence if the change in turbidity is not directly correlated with a storm event (defined as greater than 0.5 inches of rain over a 36 hour period, as measured

20

by the rain gauge established pursuant to paragraph 7.7) that occurred within 36 hours of the change in turbidity.

7.10 **Procedure for appeal.** Defendant can continue to use water that it would otherwise Reject pursuant to paragraph 7.9 and/or challenge the application of paragraph 7.4 according to the following procedure. Within two weeks of the decision to accept water that does not comply with paragraph 7.9, Defendant can submit a written statement explaining why it believes that the water accepted was not under the direct influence of surface water, as defined by 40 C.F.R. § 141.2. Plaintiffs' designated representative will then be allowed to respond within two weeks with a written rebuttal. In preparing this rebuttal, Class Counsel, including designated representatives, will be given access to the records compiled under paragraph 7.8 within one week of the submission of Defendant's written statement. Judge Renfrew shall then review the written submissions and provide determination of whether Defendant was entitled to accept the water. If Judge Renfrew determines that Defendant should have Rejected the water as "under the direct influence of surface water" as defined by 40 C.F.R. 141.2, Defendant will pay an amount equal to the after tax profit on the amount of water received in the disputed load or loads. The amount will be paid as a charitable donation pursuant to the terms of the settlement agreement. Under no circumstances shall water that need not be Rejected under paragraph 7.9 be considered "under the direct influence of surface water."

7.11 **Microscopic particulate monitoring.** Defendant will perform Microscopic Particulate Analyses ("MPAs") at each of the four sites it currently collects spring water from in the State of Maine: Poland Spring (located in Poland Spring), Garden Spring (located in Poland), Evergreen Spring aka Pure Mountain Spring (located in Fryeburg), and Clear

21

Spring (located in Hollis). The MPAs will be taken on each individual borehole at each site, except that at Poland Spring and Clear Spring the MPA may be taken on a composite basis due to the large number of boreholes on site. The results of these tests will be made available to the plaintiffs' representative on demand following receipt of the laboratory results by Defendant, within two weeks of the demand. The MPAs for each of these locations will be performed twice a year. Defendant will use good faith efforts to have the first test of the year be completed during the period February 1 to April 30 (the "Spring season test"), and the second test of the year be completed during the period August 1 to October 31 (the "Fall season test").

7.12    **Results of first test; second test.** In the event that either a Spring season test or Fall season test shows "high risk" of surface water influence as measured under the Environmental Protection Agency Consensus Method for Microscopic Particulate Analysis, Defendant will perform a second test within two (2) weeks of receiving the results. If that test also shows "high risk" of surface water influence, the situation will be treated in accordance with paragraph 7.13 below. If that test does not show "high risk" of surface water influence, the previous result will be considered to be the result of testing error, and will be disregarded.

7.13    **Effect of two "high risk" MPAs.** If the second MPA performed pursuant to paragraph 7.12 shows "high risk," Defendant will Reject the water that is collected within one week of a storm event (defined as greater than 0.5 inches of rain over a 36 hour period, as measured by the nearest weather station as established by paragraph 7.7 above) from that source for the next twelve (12) months. Defendant may use and need not Reject the water from that source if there has been no storm event during the previous

22

seven (7) days.  This paragraph shall not apply if Defendant subsequently conducts an MPA test within seven (7) days of a storm event and that MPA test shows a result of "moderate" or "low" risk of surface water influence.

7.14 **Procedure for appeal.**  Defendant can also utilize a source and challenge the application of paragraph 7.13 according to the following procedure. Within two (2) weeks of the decision not to Reject a load that does not comply with paragraph 7.13, Defendant can submit a written statement explaining why it believes that the water accepted was not under the direct influence of surface water, as defined by 40 C.F.R. § 141.2. Plaintiffs' designated representative will then be allowed to respond within two (2) weeks with a written rebuttal. In preparing this rebuttal, the plaintiffs' designated representative will be given access to the records compiled under paragraph 7.11 within one (1) week of the submission of Defendant's written statement.  Judge Renfrew shall then review the written submissions and provide a determination of whether Defendant was entitled to accept the water.  If Judge Renfrew determines that Defendant should have Rejected the water from that source as "under the direct influence of surface water" as defined by 40 C.F.R. § 141.2, Defendant shall pay an amount equal to the after tax profit on the amount of water received in the disputed load or loads.  The amount will be paid as a charitable donation pursuant to the provisions of the Agreement.  Under no circumstances will water that need not be rejected under the provisions of paragraphs 7.12 and 7.13 be considered "under the direct influence of surface water."

7.15 **Duration of long term monitoring and MPA monitoring requirements.** The provisions of the long term monitoring program set forth in paragraphs 7.1 - 7.14 above shall be in effect for five (5) years from the Effective Date.

7.16 **General dispute resolution provision.** If Class Counsel contest Defendant's compliance with the Rules of Section 7, Class Counsel shall provide written notice to Defendant at the office of its general counsel. Defendant will then be required to respond to this written notice by explaining the reasons for violation, or why it contends no violation occurred. Any disputes about whether a violation occurred, or whether Defendant acted reasonably in violating the rule, will be determined according to the following procedure. Judge Renfrew shall review the plaintiffs' written notice and Defendant's response, and any additional materials submitted by the parties. Plaintiffs' representative will have the burden of establishing, by a preponderance of the evidence, that a violation occurred, and that such violation was not substantially justified consistent with the principles set out in the above rules. If Judge Renfrew determines that Defendant violated the rules without substantial justification, he may impose a payment requirement of up to the amount of after-tax profit that is attributable to the violation. The amount will be paid as a charitable donation pursuant to the provisions of this Agreement. The rules in this paragraph shall not apply to an appeal.

7.17 None of the terms of this Section shall be construed to create or imply a definition of "direct influence of surface water" other than as set forth in 40 C.F.R. § 141.2. The agreement to Reject water under certain conditions as set forth in this Agreement does not constitute an admission or concession that such water is a fact under the direct influence of surface water.

## 8.   CERTIFICATION OF SETTLEMENT CLASS

8.1   For settlement purposes only, the Parties stipulate that the Class Representative is an adequate representative of the Settlement Class, that the putative

class is so numerous that joinder is impossible, that common issues predominate over individual or unique issues, and the Parties shall request, as part of the Preliminary Approval Order, that the Court enter an order certifying the Settlement Class, and appointing Plaintiff as representative of the Settlement Class.

8.2    Defendant does not consent to certification of the Settlement Class for any purpose other than to effectuate the Settlement and dismiss the Action. If this Agreement is terminated pursuant to its terms, the Effective Date does not occur, or for any reason the Settlement described in this Agreement is not effectuated, any order certifying the Settlement Class shall be vacated upon notice of termination of the Settlement to the Court, and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to the Parties to either request or oppose class certification.

## 9.    ORDER PRELIMINARILY APPROVING SETTLEMENT, APPROVING NOTICE OF PROPOSED SETTLEMENT, AND SETTING SETTLEMENT HEARING

9.1    The Parties agree to apply to the Court for entry of a Preliminary Order, substantially in the form of *Exhibit A* to this Agreement, as soon as practicable after the execution of this Agreement. The Preliminary Order shall contain the provisions set forth in paragraphs 9.2 through 9.16.

9.2    The Preliminary Order shall adopt the definitions set forth in paragraphs 2.1 through 2.23 of this Agreement.

9.3    The Preliminary Order shall preliminarily approve this Agreement, and each of the releases and other terms set forth herein, as falling within the range of possible approval and meriting submission to the Settlement Class Members for consideration.

9.4    The Preliminary Order shall provisionally certify the Settlement Class as:

25

> **"All persons and/or entities who have purchased and/or consumed**
> **Poland Spring brand of bottled water and/or Poland Spring brand of**
> **spring water products within the United States of America any time**
> **during the period January 1, 1996 to the present.  Excluded from the**
> **class are Defendants, their subsidiaries and affiliates, and any officers**
> **and directors thereof, as well as any judge presiding over this action,**
> **the judge's spouse and immediate family."**

The Preliminary Order shall also provisionally designate KENNETH RAMSEY as Class Representative.  The Preliminary Order shall also provisionally designate Attorney Robert M. Foote of FOOTE, MEYERS, MIELKE & FLOWERS, LLC and Attorney Kathleen C. Chavez of CHAVEZ LAW FIRM as Class Counsel.

9.5    The Preliminary Order shall appoint L. STEPHENS TILGHMAN  of Tilghman & Co., P.C. as Notice Plan Administrator, and shall provide for the implementation of the Notice Plan ("Notice Plan") as set forth in the Affidavit of L. Stephens Tilghman attached hereto as *Exhbit B*.

9.6    The Preliminary Order shall require that Class Counsel shall publish, at Defendant's expense, but limited to the amounts listed in the Notice Plan, in the manner set forth in the Notice Plan, a form of summary notice of the proposed settlement ("Summary Notice"), substantially in the form attached hereto as *Exhibit C.*  The Preliminary Order shall require that Class Counsel, at Defendant's expense, mail by first class a copy of the long form of notice ("Long Notice") substantially in the form attached hereto as *Exhibit D,* to present and former customers of Defendant's Poland Spring home and office delivery business who were mailed an invoice going back to December, 1999.  The Preliminary

26

Order shall require that Class Counsel shall post a website, as set forth in the Notice Plan, which shall provide for the viewing and downloading of a copy of this Agreement and the Long Notice.

9.7     The Preliminary Order shall find that dissemination of the Notice in the manner required by paragraph 9.6 constitutes the best notice practicable under the circumstances to potential members of the Settlement Class and complies fully with Illinois law, the United States Constitution, and any other applicable law.

9.8     The Preliminary Order shall provide for a Settlement Hearing to be held on a date to be set forth in the order, at which the Court will determine: (1) whether the settlement of the Action should be approved as fair, reasonable and adequate; (2) whether a Final Judgment as provided in Section 10 of this Agreement should be entered; (3) whether a final order certifying the Settlement Class should be approved; and (4) whether the application of Class Counsel for an award of attorneys' fees, costs and expenses pursuant to Section 12 of this Agreement should be approved.  The Court may adjourn or continue the Settlement Hearing without further notice to the Settlement Class.

9.9     The Preliminary Order shall provide that at or after the Settlement Hearing, the Court shall rule on the application of Class Counsel for an award of attorneys' fees, costs and expenses, and for payment to the class representative.  Defendant shall not object to an award of fees in an amount not to exceed one million three hundred and fifty thousand dollars ($1,350,000.00).  Defendant shall not object to an award of costs and expenses not to exceed seventy thousand dollars ($70,000.00). Fees and expenses to class representative will be paid by Defendant in addition to the relief granted to the class. Defendant shall not object to payment to Class Representative Kenneth Ramsey in an

27

amount not greater than twelve thousand dollars ($12,000.00). Any orders or proceedings relating to the application of Class Counsel for an award of attorneys' fees, costs and expenses shall not operate to terminate or cancel this Agreement, and shall have no effect on the finality of the Final Judgment to be entered pursuant to this Agreement.  The payment of approved attorneys' fees, expenses, costs and award to the Class Representative shall be paid within thirty (30) business days of the Effective Date.

9.10   The Preliminary Order shall provide that any Settlement Class Member who objects to the settlement of the Class Action or the application of Class Counsel for attorneys' fees, costs, and expenses, and award to Class Representative shall have a right to appear and be heard at the Settlement Hearing.  Any such person must file with the Court and deliver to Class Counsel and Counsel for Defendant a written notice of objection postmarked on or before a date to be set forth in the order.  The manner by which a notice of objection should be prepared, filed, and delivered shall be stated in the Notice.  Only Settlement Class Members who have filed and delivered valid and timely written notices of objection will be entitled to be heard at Settlement Hearing, unless the Court otherwise so orders.

9.11   The Preliminary Order shall provide that briefs supporting or opposing the settlement shall be served and filed in accordance with the schedule set forth in the Preliminary Order.

9.12   The Preliminary Order shall provide that neither the Preliminary Order, nor this Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by

Defendant of the truth of any of the allegations in the Complaint, or of any liability, fault, or wrongdoing of any kind.

9.13   The Preliminary Order shall stay all discovery and other proceedings in the Action with respect to the claims and defenses of the parties to this Agreement until further order of the Court, except as may be necessary to implement the settlement of the Action or comply with the terms of this Agreement.

9.14   The Preliminary Order shall bar and enjoin all Releasors from commencing or prosecuting any direct or representative action, or any action in any other capacity, asserting or relating to any of the Released Claims, unless and until this Agreement is terminated according to its terms.  The Preliminary Order shall provide that following the issuance of the Final Approval, the Court shall retain continuing jurisdiction over the subject matter of the Action, the Class Representative, the Settlement Class Members, and the Defendant to administer the matters set forth in this Agreement.  The order shall provide that in the Final Approval, the Court shall appoint Judge Renfrew as Special Master to decide any and all disputes arising under or related to this Agreement as provided for in paragraph 14.4.

9.15   The Preliminary Order shall provide that the Final Judgment will permanently bar and enjoin all Releasors from commencing or prosecuting any direct or representative action, or any action in any other capacity, asserting or relating to any of the Released Claims.

9.16   The Preliminary Order shall provide that the Court may, for good cause, extend any of the deadlines set forth in the order without further notice to the Settlement Class.

29

**10.   FINAL JUDGMENT AND ORDER OF DISMISSAL OF THE ACTION**

10.1   Class Counsel and Counsel for Defendant agree to apply to the Court for entry of a Final Judgment and Order of Dismissal of the Action, substantially in the form of **Exhibit D** to this Agreement, at the conclusion of the Court's consideration of the issues to be determined at the Settlement Hearing provided for in paragraph 9.8.  The Final Judgment shall contain the provisions set forth in paragraphs 10.2 through 10.12.

10.2   The Final Judgment shall adopt the definitions set forth in paragraphs 2.1 through 2.23 of this Agreement.

10.3   The Final Judgment shall provide that the Court has continuing jurisdiction over the subject matter of the Action, the Class Representative, the Settlement Class Members, and the Defendant to administer the matters set forth in this Agreement.

10.4   The Final Judgment shall find that the publication of the Summary Notice and mailing of the Long Notice as provided for in the Preliminary Order constituted the best notice practicable under the circumstances to all persons within the definition of the Settlement Class, and fully complied with Illinois law, the United States Constitution, and any other applicable law.  The Final Judgment shall certify the Settlement Class.

10.5   The Final Judgment shall approve the settlement of the Action set forth in this Agreement, including the respective contributions of the Defendant, each of the releases and other terms, set forth herein, as fair, reasonable, and adequate to the Parties.  The Final Judgment shall order the Parties to consummate the settlement in accordance with its terms as set forth in this Agreement.

10.6   The Final Judgment shall dismiss the Action, and all claims contained therein, with prejudice to the Plaintiff and all Settlement Class Members.

30

10.7   The Final Judgment shall provide that all Releasors shall conclusively be deemed to have released and forever discharged the Released Persons from all Released Claims.

10.8   The Final Judgment shall provide that all Releasors shall conclusively be deemed to have acknowledged that the Released Claims include all claims, rights, demands, causes of action, liabilities, or suits, including Unknown Claims, as of the Effective Date.  These persons nonetheless release all such claims.

10.9   The Final Judgment shall permanently bar and enjoin all Releasors from commencing or prosecuting any direct or representative action, or any action in any other capacity, asserting or relating to any of the Released Claims.

10.10 The Final Judgment shall provide that the Court reserves exclusive and continuing jurisdiction over the Action, the Class Representative, the Settlement Class Members, the Defendant and this Agreement.  The Final Judgment shall appoint Judge Renfrew as Special Master to decide any and all disputes arising under or related to this Agreement as provided for in paragraph 14.4

10.11 The Final Judgment shall provide that neither the Final Judgment, nor this Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be:  (1) construed as an admission or concession by Defendant of the truth of any of the allegations in the complaint, or of any liability, fault, or wrongdoing of any kind; or (2) referred to, offered as evidence, or received in evidence in any pending or future civil, criminal, or administrative action or proceeding, except in a proceeding to enforce the Final Judgment, or to defend against the assertion of the Released Claims, or as otherwise required by law.

31

10.12  The Final Judgment shall provide that, within thirty (30) days of the Final Judgment, Class Counsel shall return to Counsel for Defendant the originals and all copies of all documents produced to the Class Representatives by Defendant or by Defendant's Counsel during the course of discovery in the Action.

### 11.   RELEASES

11.1   As of the Effective Date, the Class Representative hereby fully, finally and forever releases, relinquishes and discharges all Released Claims (including "Unknown Claims") against the Defendant and each and all of the Released Persons.

11.2   As of the Effective Date, each and all Settlement Class Members shall be deemed to have fully, finally and forever released, relinquished and discharged all Released Claims (including "Unknown Claims") against the Defendant and each and all of Released Persons.

11.3   As of the Effective Date, the Defendant hereby fully, finally and forever releases, relinquishes and discharges all Released Claims (including "Unknown Claims") against the Class Representative and their counsel.

### 12.   ATTORNEYS' FEES, COSTS AND EXPENSES

12.1   The Class Representative or Class Counsel may apply to the Court for: (1) an award of attorneys' fees; plus (2) reimbursement of any costs and expenses incurred in connection with the Action pursuant to paragraph 9.9 above.  The application shall be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in this Agreement.  Nothing regarding the Court's decision on the application for attorneys' fees, costs, and expenses shall operate to

terminate or cancel this Agreement, or have any effect on the finality of the Final Approval and order of dismissal.

12.2    Class Counsel shall request that the Court award a specific amount to Class Counsel for their attorneys' fees and the amount they should be reimbursed for their actual costs and expenses, including expert fees. The Defendant has agreed not to object to a fee petition that does not exceed the amount of one million three hundred and fifty thousand dollars ($1,350,000.00) to be paid to Class Counsel. The Defendant has agreed not to object to a costs and expense petition that does not exceed the amount of seventy thousand dollars ($70,000.00) to be paid to Class Counsel for reimbursement of costs and expenses incurred in the litigation of this matter.

**13.    EFFECTIVE DATE OF THE SETTLEMENT AGREEMENT**

13.1    The Final Judgment of the Class Action shall become effective and final on the first date by which all of the events set forth in paragraphs 13.2 through 13.11 have occurred.

13.2    Class Counsel and Counsel for Defendant have executed this Agreement.

13.3    The Court has entered the Preliminary Order as provided for in paragraphs 9.1 through 9.16.

13.4    The Court has held the Settlement Hearing as provided for in paragraph 9.8.

13.5    The Court has entered the Final Judgment as provided for in paragraphs 10.1 through 10.12.

13.6    The time to appeal from the Final Judgment, has expired without any appeal having been perfected, thirty days (30) after entry of Final Judgment.

33

13.7   If any appeal is taken from the Final Judgment or any interim order in the Action, the appeal has either been dismissed or has been affirmed.

13.8   If a ruling or decision is entered by an appellate court with respect to the Final Judgment or any interim order in the Action, the time to petition for a writ of certiorari with respect to the ruling or decision has expired.

13.9   If a ruling or decision is entered by an appellate court with respect to the Final Judgment or any interim order in the Action, the time to petition for review by the Illinois Supreme Court with respect to the ruling or decision has expired; or if filed, such a petition has been denied or dismissed; or, if filed and granted, has resulted in affirming the judgment or order.

13.10  If a petition for a writ of certiorari with respect to the Final Judgment or any interim order in the Action is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirming the judgment or order.

13.11  Any proceeding or order, or any appeal or petition for writ of certiorari pertaining solely to an application for attorney's fees, costs or expenses shall not in any way delay or preclude the Final Judgment from becoming Effective.


**14.   OTHER TERMS**

14.1   The Parties agree to exercise their best mutual efforts to accomplish the terms and conditions of the Agreement.

14.2   This Agreement constitutes the entire settlement among the Parties and supersedes any prior agreements or understandings between them relating to the settlement of the Action.

34

14.3   The Agreement may be amended or modified only by a written instrument signed by Class Counsel and Counsel for Defendant. Amendments and modifications may be made without notice to the Settlement Class unless the Court requires notice.

14.4   The Agreement and exhibits shall be subject to, governed by, and constituted and enforced pursuant to the laws of the State of Illinois, without reference to its conflicts of law provisions.  The parties agree that any disputes arising out of, in connection with, or related to this Settlement Agreement shall be submitted for binding arbitration to the Hon. Charles Renfrew (retired).  The parties agree that any decision made by Judge Renfrew shall be final and binding on the Plaintiff, the Settlement Class and the Defendant.  In the event that Judge Renfrew is not available or is unwilling to decide any dispute submitted to him, the parties agree that they shall use good faith efforts to agree on an alternate retired Federal Judge to decide the dispute.  In the event that the parties are unable to decide on such individual, they agree to submit the matter to JAMS for appointment of such individual.

14.5   The exhibits to the Agreement are an integral part of the settlement and are hereby incorporated and made a part of the Agreement.

14.6   Counsel for Defendant represent that they have the full authority of the Defendant to execute the Agreement.

14.7   The Agreement may be executed in one or more counterparts, which together shall be deemed one original agreement. Execution via facsimile shall be acceptable to bind a party as an original.

14.8   The Parties agree that any rule of construction to the effect that any ambiguities are to be construed against the drafting parties shall not be employed in the interpretation of this Agreement.

14.9    The Parties intend this settlement to be a final and complete resolution of all disputes between then with respect to the Action.  The settlement compromises claims which are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense.

IN WITNESS WHEREOF, the Parties, and their respective counsel, have executed this Settlement

Agreement as of _____, 2003.

**CLASS REPRESENTATIVE**

By:_____
        KENNETH RAMSEY

**NESTLE WATERS NORTH AMERICA INC.**

By:_____
        J. MARK EVANS
        Vice President, General Counsel & Secretary

**FOOTE, MEYERS, MIELKE & FLOWERS, LLC**

BY:_____
        ROBERT M. FOOTE, ESQ.

**CHAVEZ LAW FIRM**

BY: _____
        KATHLEEN C. CHAVEZ, ESQ.

**ORLOFF, LOWENBACH, STIFELMAN & SIEGEL**

BY:_____
        JEFFREY M. GARROD, ESQ.

**FARELLA, BRAUN & MANTEL, LLP**

BY:_____
        THOMAS MAYHEW, ESQ.

Jeffrey M. Garrod, Esq.
ORLOFF, LOWENBACH, STIFELMAN & SIEGEL
101 Eisenhower Parkway
Rossland, NJ 07068
(973) 622-3073

Thomas Mayhew, Esq.
FARRELL, BRAUN & MANTEL, LLP
Russ Building
235 Montgomery Street
San Francisco, CA 94104
(415) 954-4480